The case for argument today is United States v. Jones. Good morning, Your Honors. May it please the Court, I'm Joshua Euler. I represent Demarrel Jones. The case against Demarrel Jones was not strong. Even with a police officer testifying that he observed Mr. Jones throw a gun in between two houses and then recovering a gun from that general area, there were serious questions about his guilt. The gun was caked in dried up mud. Another individual's DNA was on the firearms magazine. Mr. Jones's was not. There were no fingerprints. All three officers involved in the incident failed to account of the approach. All of this was delivered to the jury, I take it? It was. One officer said he heard the gun hit the concrete. Another officer said he heard the gun hit the dirt. So this was a close case. And to Your Honor's point, the fact that the jury deliberated for a period of time longer than the evidence lasted in the case supports how close the case really was. And it hinged entirely on the credibility of one witness, and that was Officer Malone. Because of how close the case was, even the slightest reason to question the officer's credibility or veracity or perceptiveness might have moved the needle towards an acquittal. The finding made by Magistrate Judge David Jones in the case of United States v. Devin Brantley was that needle mover. I'd like to briefly explain what that finding was. In the Brantley case, the defendant filed a motion to suppress, arguing that his stop was unlawful. At issue there was whether there was reasonable suspicion to affect the hearing. This was a couple of months before the Jones trial. He testified that he had seen a suspect discard a firearm in a median in the middle of the street. And about 30 minutes later, he saw an individual coming from a different direction. And he testified that a few factors went into his decision to have that person stopped. One was the complexion matched the complexion of the person that he had seen about 30 minutes earlier. Another was that the person had on dark rimmed eyeglasses. He made these observations from a distance of about 80 yards in the dark. Ultimately, the magistrate judge said that his observations that he testified to were not possible. The government likely appreciated the significance of Officer Malone to the government's case. And in advance of the trial, they filed a motion in limine, asking the district court to preclude Jones from cross-examining this officer about those findings in the Brantley case. And the district court... The magistrate did find that his credibility wasn't the question. The question is whether or not he was making a mistake. Well, the magistrate judge, in a footnote to his... Just in theory, you're finding the idea to the logical conclusion, anytime this police officer is involved from here on out, any testimony gives the subject to be sort of put on the basis of a judge found that he was not credible. And... She might as well fire him. It's our view that that is what the finding was, that the officer was not credible. The government sort of frames the argument in the context of what the judge called his finding in the footnote, saying he wasn't finding that the officer intentionally lied. Right. But that sort of reflects what the Second and Tenth Circuits have referred to as a trier of facts, desire to use more gentle language in describing an officer's credibility finding. And the finding, again... But at the end of the day, didn't the Brantley court explicitly state that it was not questioning his truthfulness and therefore not rendering an adverse credibility finding? Well, that's certainly what the judge called the finding. That's what he named the finding. But the finding itself, this wasn't a situation where the judge said or the witness said that something happened on Tuesday when it actually happened on a Wednesday. The judge's actual finding here, Your Honor, was that this witness, his testimony was not possible, that he couldn't have possibly seen what he testified to see. You know, one of the things that's wrong with that is that anything is possible, including the fact we were all created 10 minutes ago with our memories intact, but they're improbable. What if our judge found this is improbable? He made a mistake. And... And, you know, had we been permitted to cross-examine him about it, the government certainly would have been able to introduce... What, cross-examine the magistrate? No, but... He's unavailable for that purpose. Correct. Wouldn't you say that was pure hearsay? Well, the court has routinely allowed this type of questioning... What court? This court, the Dawson decision, Rule 607 and 608 allow any witness to be impeached or cross-examined about prior instances of untruthfulness. So there's a limit on the use of extrinsic evidence to prove up those instances of untruthfulness. Certainly, maybe this court not routinely, but circuit courts around the country have allowed this line of questioning. What do you think redirect would have looked like had this evidence come in? One of the concerns that the district judge had in this case was that the witness may not even know about what the findings were in that case. My question is, what do you think redirect would have looked like? Can you imagine the prosecutor... Because I don't see how one could put in evidence that on a particular occasion, a magistrate judge thought that the witness had not seen what he believed he had seen, without putting in, in rebuttal, evidence that on 57 other occasions, a magistrate judge or jury believed that he had seen what he thought he had seen. And the government... Totally detached from what the defendant is accused of, that it's unmanageable. And the government made an offer of proof as to what it was prepared to introduce in the event that the court allowed Jones to cross-examine the officer about these issues. And the government did not indicate that it would be bringing in other witnesses to testify about the number of times this officer has testified and not been found to have given incredible testimony. Rather, it said it was going to bring in some evidence to support that he actually did see what he testified to seeing that day. So ultimately, it's our view that this was something for the jury to decide what weight to give that testimony. Amen. What you're talking about. And the judge took that ability away from the jury in this case. The jury could have given it the weight and the significance that the government wanted it to receive. And they certainly could have done the opposite. I think it's worth noting that the court noted that the findings were prejudicial. That is, that they probably would hurt the government's case. And I see I have a minute left. I'm going to go on. We followed the court's order. And again, this was a close case. It was on the line without that information. It's our view that the jury was really deprived of the one thing that might have moved this case towards an acquittal. Instead, the jury received the opposite. And while we didn't get into the questions of this witness's credibility, the prosecutor in its rebuttal argument vouched for this witness's credibility. And that had the effect of pushing the needle here towards a conviction. And the prosecutor's comments were clearly improper. They've conceded as much to a certain extent. If we go back and look at how close this case was, again, it's our position that the cross examination would have resulted in acquittal. And rather, the court's constantly said that it must view questions of prosecutorial misconduct in the context of a whole trial. And you can't make that examination without recognizing the cloud that the question of this witness's credibility from the Brantley case, the way that hung over the trial. Thank you, counsel. Thank you. Ms. Wesley. Good morning. May it please the court. I represented the United States in the trial court. And defense counsel asserts that this was a very close case. It was not. The jury deliberated for approximately three hours, from 11 to about 2 o'clock in the afternoon. I'm not sure if they were looking for breakfast. I presume lunch. And unlike counsel indicated in this argument, there was no DNA testing in this particular case. There was a fingerprint found on the firearm that was recovered after the defendant threw it over the fence. And that fingerprint did not belong to Mr. Jones. As the court questioned and counsel indicated, all of this evidence was before the jury prior to their deliberations. And in speaking on whether or not the impeachment, or the alleged impeachment information from the Brantley case would have been. A proposed impeachment. Proposed impeachment. Would have been, or should have been admitted. I would point out in Rule 608 that the court obviously can allow impeachment evidence that's or untruthfulness of a witness. And the Rule 608 language triggers an analysis regarding whether or not the information that the impeachment information, proposed impeachment, is more probative than prejudicial. And in this particular case, it really wasn't probative of. What it was probative of was somebody else thought he was not telling, or he couldn't seen what he saw. What he said he saw. Exactly. Which is nothing at all. Agreed. All right, then why are we belaboring it? Fair enough. I'll move on. With regard to the misconduct. Essentially, the court needs to look at the three statements that are at issue. And look at them individually, as well as in context. In looking at all three of the statements in context, they were certainly invited and thus appropriate. The defense counsel in closing argument went pretty hard at the government, as well as the officers, calling them liars, rogue officers, bringing in facts outside of the record that really had nothing to do with the facts in Jones. And in response, the United States talked about the officer's currency being their reputation. And in doing so, in context, discussed the evidence in the case and asked jurors to use their common sense to make a determination regarding whether or not the officer's It just made sense in that case. Additionally, with regard to the I think comment, it was also buffered by a discussion of the evidence in the case. And also, in totality, all three statements were buffered by a discussion of the evidence and urging the jurors to use their common sense in reaching a determination or conclusion regarding guilt or innocence in this particular case. I would also note that similar comments were addressed in a number of cases cited in my brief. For example, there was, with respect to the I think comment that was made during rebuttal, in the Wolf case, there was, the prosecutor made a statement of rebuttal indicating as follows. I think you will agree with me. The witness was the clearest and sharpest at trial, which is certainly similar, somewhat similar to the statement that. Dangerously close to the vouching court. Yes. Dangerously close. Yes, and I think in Wolf, the statement that I just recited was found to be borderline inappropriate, but because the statement was followed by a discussion of the evidence, that there was no error. And the same is true with the currency. No reversible error. No reversible error. With regard to the currency of the reputation statement. Incredibly dumb. With regard to the currency, unfortunate certainly. And with regard to the currency of the reputation comment, in Swiatek as well as in McMath, there were statements in those two cases where the prosecutor in rebuttal made statements that the testifying officer had no reason to lie and risk his reputation, which I certainly implicitly references or is similar to the statement made in rebuttal. But in both those cases, this court found that the comments were invited and in context, there was no reversible error. I think based on Wolf, Swiatek, and McMath, that the result here should be the same with regard to those comments. I think I've addressed the golden rule argument in my brief and that the reversal is not appropriate under the law of this circuit. And furthermore, in this particular instance, the jury was instructed that the arguments are not evidence, both in opening instructions and closing argument. There is also the curative instruction that was provided after the golden rule statement. And furthermore, in the defendant's motion for a new trial, the district court examined the trial in totality and determined that the statements made during rebuttal were not ones which required reversal or a new trial in this case. And so with that in mind, I believe that based on the precedent of this circuit and the record in this case, I would ask that you affirm the conviction. Thank you very much. The case is taken under advisement.